In the Interest of A.Y., A.Y., B.R., A.R, and D.R., Minor Children















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-214-CV

IN THE INTEREST OF
A.Y., A.Y., B.R., A.R. AND D.R.,
MINOR CHILDREN

 

From the 19th District Court
McLennan County, Texas
Trial Court # 97-3827-1
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

     The Texas Department of Protective and Regulatory Services (“DPRS”) filed suit to terminate
the parental rights of Janette Buck with respect to her five children. As grounds for termination,
DPRS alleges that Buck: 1) knowingly placed or knowingly allowed her children to remain in
conditions or surroundings which endangered their physical or emotional well-being; 2) engaged
in conduct or knowingly placed her children with persons who engaged in conduct which
endangered the physical or emotional well-being of the children; 3) failed to support the children
in accordance with her ability during a period of one year ending within six months of the date of
the filing of the petition; and 4) failed to comply with the provisions of a court order that
specifically established the actions necessary for her to obtain the return of her children. See Tex.
Fam. Code Ann. § 161.001 (Vernon Supp. 2001). A jury found that Buck’s parental rights
should be terminated and that termination is in the best interest of the children. Buck alleges in
four points that the evidence is legally and factually insufficient to support an affirmative finding
on any of the grounds for termination alleged.
Background
      Janette Buck is the mother of A.Y., A.Y., B.R., A.R. and D.R. DPRS investigated alleged
negligent supervision of the children in September 1993, August 1995, and June 1997. In
November 1997, DPRS removed the children from the home after B.R. made an outcry of abuse. 
DPRS filed suit to terminate Buck’s parental rights September 9, 1998 and the trial court signed
the final order terminating her parental rights on July 2, 1999. 
Test for Termination of Parental Rights
      The natural right existing between parents and their children is of constitutional dimension. 
See Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985); In Re A.M.C., 2 S.W.3d 707, 710 (Tex.
App.—Waco 1999, no pet.). Termination is a drastic remedy and as such it can never be justified
without the most solid and substantial reasons. Id.; see also In Re R.E.W., 545 S.W.2d 573, 581
(Tex. App.—Houston [1st Dist.] 1976, writ ref’d n.r.e.). The final and irrevocable nature of
termination requires that the petitioner justify termination by “clear and convincing evidence.” See
Spangler v. Texas Dep’t of Protective & Regulatory Servs., 962 S.W.2d 253, 256 (Tex.
App—Waco 1998, no pet.).
      In proceedings to terminate the parent-child relationship brought under Section 161.001 of the
Family Code, the petitioner must establish two elements. First, petitioner must prove one or more
acts or omissions enumerated in the statute. See Richardson v. Green, 677 S.W.2d 497, 499
(Tex.1984). Second, petitioner must prove that termination of the parent-child relationship is in
the best interest of the child. See TEX. FAM. CODE ANN. § 161.001 (Vernon Supp. 2001);
Richardson, 677 S.W.2d at 499. Both elements must be established, with regard to each child,
and proof of one element does not relieve the petitioner of the burden of proving the other. See
Holley v. Adams, 544 S.W.2d 367, 370 (Tex.1976); Wiley v. Spratlan, 543 S.W.2d 349, 351
(Tex.1976). Buck has not attacked the jury’s determination that termination is in the best interest
of the children.
Standard of Review on Appeal
      In reviewing the legal sufficiency of the evidence on a matter for which Buck did not have the
burden of proof at trial, we consider only the evidence and inferences that tend to support the
finding and ignore all evidence and inferences to the contrary. See Leitch v. Hornsby, 935 S.W.2d
114, 118 (Tex. 1996). Under factual sufficiency, we will sustain a point of error if the trier of
fact could not reasonably find the existence of the fact to be established by clear and convincing
evidence. See Spangler, 952 S.W.2d at 257. When we review a factual sufficiency challenge in
the parental termination context, we review all of the evidence under the clear and convincing
standard. See Spangler, 952 S.W.2d at 256.

However, we have recently held that because of the constitutional dimension of the parent-child
relationship and the heightened burden of proof required in termination cases we will review the
sufficiency of the evidence to support the “core issues,” if assigned as error before us, regardless
of whether the complaint has been procedurally preserved at trial. See In re A.P, No. 10-00-105-CV, slip op. at 7, 2001 Tex. App. LEXIS 1329, at *10-11 (Tex. App.—Waco Feb. 28, 2001, no
pet. h.). Therefore we will review Buck’s sufficiency complaints.
Failure to Comply with a Court Order 
      DPRS alleges that Buck did not comply with the provisions of a court order that stated the
actions necessary to obtain the return of her children. The court mandated that Buck: 1) get a
psychological evaluation; 2) attend and participate in individual and group counseling; 3) gain
employment; 4) maintain a safe environment for the children; and 5) pay monthly child support
of five dollars per child.
      Buck received a psychological evaluation soon after the children were removed. Buck also
attended over three-quarters of her scheduled counseling sessions. DPRS contends she did not
participate sufficiently in therapy but agrees that her attendance was excellent.
      Buck testified that she gained employment for a short period of time but she quit her job after
she was almost attacked on her way home. She testified that she was laid off from another job. 
DPRS introduced testimony that she was not fired from either job, but simply quit. Buck testified
that she has not been able to find employment despite visits to the Texas Employment Commission
and applications to fourteen local establishments.
      DPRS alleges that Buck has failed to maintain a safe environment for the children in the
home. However, after the children were removed, caseworker Hakeem Adenirigun visited the
home and found it to be “fairly clean.” DPRS investigator Pam Stites testified that she made
several surprise visits after the children were removed and the house was “certainly acceptable.” 
      DPRS argues that there is the continued risk of allowing the children to live with a convicted
sex offender. Buck’s father Ellis Allen Younger lives in her home. He was convicted in 1974 of
sexual assault. DPRS contends that as long as Younger resides with Buck, there is a risk that the
children will be molested. Buck denies that Younger sexually assaulted her. She claims that he
was wrongly convicted and that he has never done anything inappropriate to her children.
      The final requirement of the court’s order mandated that Buck pay monthly child support in
the amount of five dollars per child. Adenirigun testified that Buck has not paid any of the court
ordered child support. Buck also testified that she did not pay any child support. Buck argues that
she does not have the ability to pay child support and, thus, her failure to pay should not be held
to be a violation of the court order. However, ability to pay is a factor under subsection (F). See
Tex. Fam. Code Ann. § 161.001(1)(F) (Vernon Supp. 2001). Subsection (O) only requires that
a parent violate a court order specifying the actions necessary to obtain the return of their children. 
See Tex. Fam. Code Ann. § 161.001(1)(O) (Vernon Supp. 2001).
      Viewed in the light most favorable to the judgment, we find that the evidence is legally
sufficient to support the judgment. Under the clear and convincing evidence standard of review,
we likewise find that the jury could have reasonably found that Buck failed to comply with the
court order that specifically established the actions necessary for her to obtain the return of her
children. Therefore, the evidence is factually sufficient to support the verdict.
      Accordingly, we overrule Buck’s fourth point. As the four points address alternate grounds,
and only one ground need be found legally and factually sufficient, we do not address Buck’s other
three points regarding DPRS’s alternate grounds for termination.
      The judgment of the trial court is affirmed.
 
                                                                   REX D. DAVIS
                                                                         Chief Justice

Before Chief Justice Davis
            Justice Vance and
            Justice Gray
Affirmed
Opinion delivered and filed June 6, 2001
Do not publish



e: 12pt">      The Supreme Court in American Type Culture, recites that upon the filing of a special
appearance the nonresident defendant assumes the burden to negate all bases of personal
jurisdiction alleged by the plaintiff. American Type Culture Collection, Inc. v. Coleman, 83
S.W.3d 801, 807 (Tex. 2002). Although, the majority in this case emphasizes the word
“alleged,” the Supreme Court does not attribute any special meaning to this word. And from
the opinion, we do not know whether the Court refused to examine the evidence, other
pleadings, and responses.
      And the main thrust of the Bruno’s opinion is that a plaintiff does not have to plead
enough for a meritorious claim to allege jurisdictional facts. Bruno’s Inc. v. Arty Imports,
Inc., 119 S.W.3d 893, 899 (Tex. App.—Dallas 2003, no pet.). It is true that the Dallas Court
recited a standard that said jurisdictional facts are to be pled in the petition, but the court did
not have to reach the question of whether any other source of jurisdictional facts could be used. 
It determined jurisdictional facts were alleged in the petition.



      And finally, in Walker Insurance, the court did not even recite the standard of Lacefield,
revised or not, let alone rely on it. Walker Ins. Servs. v. Bottle Rock Power Corp., 108
S.W.3d 538 (Tex. App.—Houston [14th Dist.] 2003, no pet.).
      These cases simply do not support the majority’s conclusion that we look only to the
petition to decide whether the defendant sustained his burden to negate all the bases of
jurisdiction raised by the plaintiff. Even Rule 120a permits the trial court to review
everything–including oral testimony. Tex. R. Civ. P. 120a3. And the trial judge, in this case,
informed the parties that he would review everything presented to him. And noone objected.
Ideas from Other Courts
      Are there any other cases out there on this particular issue besides Vosko, Temperature
System, and Magic House? Yes, there are.
      Some courts have expressly decided that even if not alleged in the original petition,
jurisdictional facts may be presented in an amended pleading or response to a special
appearance. Fruend v. Watley Enters., Inc., No. 07-99-0517-CV, 2000 Tex. App. LEXIS
3390, *21 (Tex. App.—Amarillo May 24, 2000, pet. denied)(not designated for publication);
Robertson v. Hensel Phelps Constr. Co., No. 01-98-01338-CV, 1999 Tex. App. LEXIS 3034,
*8 (Tex. App.—Houston [1st Dist.] April 22, 1999, no pet.). Others have held that where the
defendant failed to object to the plaintiff’s attempt to prove unpled bases of jurisdiction, those
unpled bases were tried by consent. Royal Mortg. Corp. v. Montague, 41 S.W.3d 721, 732
(Tex. App.—Fort Worth 2001, no pet.); Vessel Acquisition, L.L.C. v. Morgan & Morgan, No.
14-00-00444-CV, 2001 Tex. App. LEXIS 192, *3-5 (Tex. App.—Houston [14th Dist.]
January 11, 2001, no pet.)(not designated for publication); In re Gonzalez, 993 S.W.2d 147,
153-54 (Tex. App.— San Antonio 1999, pet. denied); 3-D Electric Co., Inc. v. Barnett Constr.
Co., 706 S.W.2d 135, 138 n. 2 (Tex. App.—Dallas 1986, writ ref’d n.r.e.). And at least one
other court, without saying the jurisdictional bases were tried by consent, reviewed the
evidence introduced at the special appearance hearing. Steve Tyrell Productions, Inc. v. Ray,
674 S.W.2d 430, 437 (Tex. App.—Austin 1984, no pet.).
      I would have thought that the issue was fully resolved by a somewhat analogous situation
in which the Texas Supreme Court discussed the issue at length. In Texas Dept. of Parks and
Wildlife v. Miranda, 133 S.W.3d 217, 223-224 (Tex. 2004), the Court was discussing what the
trial court must consider in determining whether it had subject matter jurisdiction. It reiterated
its holding in Bland that “a court must consider evidence when necessary to resolve
jurisdictional issues raised.” Id. at 223 (citing Bland Independent School Dist. v. Blue, 34
S.W.3d 547 (Tex. 2000)(emphasis in original). While this line of cases addresses subject
matter jurisdiction, as raised by a plea to the jurisdiction by a governmental entity, I see no
reason to believe that the logic of this line of authority would not apply equally to personal
jurisdiction raised by a special appearance. After all, in Bland and in Texas Dept. of Parks
and Wildlife, the Court was striking down precisely the same language about courts being
confined to the jurisdictional allegations in the pleadings.
 

The Lesson
      What does this all mean? It means the initial pleadings do not “irrevocably etch the issues
in stone.” Louis S. Muldrow & Kendall M. Gray, Treading the Mine Field: Suing and
Defending Non-Resident Defendants in Texas State Courts, 46 BAYLOR L. REV. 581, 606
(1994). It means responses and amended pleadings can supply jurisdictional facts. It means, if
a defendant does not object to the presentation of evidence of jurisdictional facts in the special
appearance hearing, those bases for jurisdiction are “tried by consent.” See Temperature Sys.,
854 S.W.2d at 673-74; Louis S. Muldrow & Kendall M. Gray, Treading the Mine Field, 46
BAYLOR L. REV. at 606-07. In these situations, simply proving nonresidency does not
satisfy the defendant’s burden.
      Zimmerman alleged at least one jurisdictional fact in his petition: part of the contract, his
payment, was performed in Texas. And remember, the test for determining jurisdictional facts
is not whether a meritorious claim has been pled. But the majority believes Zimmerman
conceded he did not allege jurisdictional facts in his petition. Even if Zimmerman did make
this concession, which I seriously question, he alleged jurisdictional facts at the hearing on the
special appearance. Glacier Guides and Rosenbruch did not object to the evidentiary
presentation of these jurisdictional facts. Thus, mere proof of nonresidency was not sufficient
to satisfy Glacier Guides’ and Rosenbruch’s burden to negate all jurisdictional bases. The
majority is incorrect in concluding otherwise.
A Proper Analysis
      Rodger Zimmerman sued Glacier Guides, Inc., an Alaskan corporation, and Jimmie
Rosenbruch, the president of Glacier Guides, individually, for a refund of almost $20,000
Zimmerman paid to Glacier Guides for a hunt that never took place.


 Glacier Guides and
Rosenbruch filed a special appearance. After a hearing, the trial court sustained the special
appearance and dismissed the case with prejudice.
      The following jurisdictional acts


 alleged by Zimmerman present the best case scenario for
his assertion of jurisdiction over Glacier Guides and Rosenbruch:
      1.   Zimmerman picked up an issue of The Alaskan Professional Hunter in 1997
at a Safari Club Meeting in either Dallas or Houston. 
 
      2.   In it, he saw what appeared to Zimmerman to be an advertisement for Glacier
Guides. 
 
      3.   Four years later, in 2001, Zimmerman saw Rosenbruch at a convention in
Nevada, and while in Nevada, scheduled a hunt and made a down payment of
$12,000 toward the total cost of the hunt. 
 
      4.   Thirty days before the scheduled hunt, Zimmerman received a call from
Rosenbruch asking for the remaining balance of approximately $7,000 for
which Zimmerman had already written a check and placed in the mail. 
 
      5.   Zimmerman attended at least twenty conventions in Texas and never saw
Rosenbruch at one of those Texas conventions until Rosenbruch was served
with this lawsuit at a Houston convention in 2001.
 
      Zimmerman does not allege that The Alaskan Professional Hunter was available for
subscription or that he had ever received it by subscription. He does not contend that Texas has
general jurisdiction over Glacier Guides and Rosenbruch but contends, instead, that specific
jurisdiction exists.
      Applying this best case scenario to the law established by the United States Supreme Court,
and the Texas Supreme Court, Texas cannot exercise specific jurisdiction over Glacier Guides
or Rosenbruch. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-76, 105 S. Ct. 2174,
85 L. Ed. 2d 528 (1985); BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 795-97
(Tex. 2002). Thus, the trial court did not err in sustaining Glacier Guides’ and Rosenbruch’s
special appearance and dismissing the case with prejudice.
      I agree the judgment should be affirmed.
 
 
 
                                                                   TOM GRAY
                                                                   Chief Justice
 
Concurring opinion delivered and filed July 7, 2004